UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

FILED
DEC 30 2005
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

NORMAN LEE TOLER, )
13698 Airport Road )
Bowling Green, MO 63334 )
Plaintiff,

2:05CV000082JCH

v. ) Case No. ____________

)

TIM LEOPOLD, in his individual and official capacity as Food Service Manager at Northeast Correctional Center (NECC), )
TOMMY BARNHART, in his individual and official capacity as Chaplin at NECC, )
JIM MOORE, in his individual and official capacity as Superintendent of NECC, )
JOE TIFFANY, in his individual and official capacity as Assistant Superintendent at NECC, )
DEBRA KELLY, in her individual and official capacity as Classification Case Worker at NECC, )
WILLIAM STANGE, in his individual and official capacity as Functional Unit Manager at NECC, )
AND, )

JURY TRIAL DEMANDED

NORTHEAST CORRECTIONAL )
CENTER, )
)
all of the above defendants )
being found at: )
Northeast Corr. Ctr. )
13698 Airport Road )
Bowling Green, MO 63334 )
AND, )
The MISSOURI DEPARTMENT OF )
CORRECTIONS and, )
PATRICIA CORNELL, in her )
individual and official )
capacity as Assistant )
Director of the Division )
of Adult Institutions, )
)
the last two defendants )
being found at: )
2729 Plaza Drive )
Jefferson City, MO 65109 )
)
Defendants. )

COMPLAINT UNDER
THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT,
THE RELIGIOUS FREEDOM RESTORATION ACT AND TITLE 42 U.S.C. §1983

I. JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to and in accordance with the provisions of 28 U.S.C. §§1331, 1343 and 2202. This action arises under the Religious Land Use and Institutionalized Persons Act, the Religious Freedom Restoration Act, Title 42 U.S.C. §1983 and the United States Constitution,

including, but not limited to, the First, Ninth and Fourteenth Amendments. Plaintiff claims that the defendants and their agents, individually and in active conspiracy, acting in their individual and official capacities under color of state law, to include the Missouri Department of Corrections and Northeast Correctional Center, did subject Plaintiff, or caused Plaintiff to be subjected to, a deprivation of his rights which are secured by the Constitution and Laws of the United States. Further, because Defendants have imposed a substantial burden on the ability of Plaintiff to freely exercise his religion, Plaintiff seeks redress for his injuries and damages.

2. All of the acts alleged herein occurred at Northeast Correctional Center (NECC) within the Missouri Department of Corrections (MDOC) located in Bowling Green, Missouri, within the County of Pike which is within the jurisdiction of this Court.

II. Parties and Allegations

3. Plaintiff, Norman Lee Toler, is a United States citizen who, at all times relevant to this petition, has been incarcerated in NECC.

4. Further, Plaintiff is a sincere and practicing member of the Jewish faith.

5. Defendant Leopold is and was, at all times relevant to this complaint, the Food Service Manager at NECC and, in this position, is responsible for menu planning and management of Food Service at NECC, including making decisions on the approval or denial of substitute and alternative meals and foods to be served for religious and/or medically indicated dietary need of inmates.

6. Defendant Barnhart is and was, at all times relevant to this petition, employed as Chaplain of NECC and, in that position, is responsible for the planning and implementation of religious programming for the inmate population of NECC, including the administration of such programs as are needed to accommodate inmate followers of the different and various religious which are recognized by the MDOC for either individual or group practice.

7. Defendant Moore is and was, at all times relevant to this petition, Superintendent of NECC, and in this position, is responsible for the overall operation and supervision of NECC including making the final decision on what actions will be taken on matters submitted by inmates that reach the grievance level.

8. Defendant Tiffany is and was, at all times relevant to this petition, the Assistant Superintendent of Offender Management at NECC and is, in that position, responsible for implementing and applying administrative and policy decision regarding the offender population, including making final determinations on staff actions regarding Informal Resolution Requests (IRR) which are submitted by offenders to initiate the offender grievance process.

9. Defendant Kelly is and was, at all times relevant to the petition, a Classification Case worker at NECC and, in that position, is responsible for the coordination and management of the offenders assigned under her supervision, including addressing their needs, as well as investigating and recommending resolutions of IRR's submitted by inmates.

10. Defendant Stange is and was, at all time relevant to this petition, a Functional Unit Manager at NECC and, in that position, is responsible for the management of staff and offenders assigned to the housing unit under his supervision, as well as making findings as to the appropriate staff actions to be taken when an inmate submits an IRR.

11. Defendant Cornell is and was, at all time relevant to this petition, the Assistant Director of the Division of Adult Institutions, and in that position, is responsible for implementing the rules, regulations, policies and procedures of the Department, including the directives of the Director, as well as making the final determinations on appropriate staff actions when an inmate appeals the decision on a grievance that the offender has filed.

12. The Defendant, the Missouri Department of Corrections, has the responsibility of supervising and controlling the programs assigned to it and any of its divisions by the General Assembly and to advise, consult and cooperate with other state agencies, local governmental units, private entities, other states and interstate and interlocal agencies in developing and implementing programs to fulfill the department's responsibilities to the public and the offenders committed to its custody including the requirement to modify the programs under its supervision to accommodate the needs of individual offenders as required by State and Federal law including the United States Constitution.

13. The Defendant, Northeast Correctional Center, has the

responsibility to supervise and control the programs and offenders assigned to it, including the requirement to modify the programs under its supervision to accomodate the needs of the offender as required by State and Federal law, including the United States Constitution.

14. It is a mandate of Jewish dietary law that a Jew, such as Plaintiff, must only eat Kosher food and the consumption of even the slightest morsel of non-kosher food taints not only Plaintiff's body but also his soul itself.

15. On or about August 16, 2005, Plaintiff spoke with Defendant Leopold expressing Plaintiff's need for a Kosher diet. In response, Defendant Leopold stated that it had been discussed previously, but no accommodation for Kosher diets would be made for Jewish offenders.

16. On August 17, 2005, Plaintiff filed an Informal Resolution Request (IRR) asking that a Kosher food program be implemented so that he could eat in accordance with his religious beliefs.

17. On September 14, 2005, after investigation by Defendant Kelly, a response was issued by Defendant Stange stating, in part that, "investigation into your complaint is complete and there is no kosher kitchen available here at NECC to provide a kosher diet. Also the menu has been planned to address as many medical and religious diet needs as possible with the standard meal plan... Therefore this should resolve this IRR and no further action is required." This decision was reviewed and approved by Defendant Tiffany. No Kosher meals were subsequently offered to

Plaintiff.

18. On September 20, 2005, Plaintiff submitted his Grievance, reiterating his complaint that the defendants were violating Plaintiff's rights by denying him Kosher meals and that the defendants had not provided any valid penological interest for denying Plaintiff Kosher meals.

19. On September 26, 2005, Plaintiff received the "Superintendent's Response" from Defendant Moore stating that, "the production or purchase of kosher meals for -1- offender at NECC would cause a substantial burden on this institution."

20. On October 3, 2005, Plaintiff submitted his Grievance Appeal setting forth in detail how the named defendant's actions of denying Plaintiff Kosher meals was a denial of his rights and explaining how his dietary needs could be accommodated at de minimis cost in addition to incorporating all of his contention that were made previously in his IRR and Grievance.

21. On October 18, 2005, Plaintiff received the appeal response wherein Defendant Cornell stated, that "at this time kosher meals/diets will not be offered."

22. Plaintiff has exhausted all of his administrative remedies, representing exhaustion of the grievance procedure pursuant to 28 CFRs 40 and other applicable federal laws, as he has completed the Informal Resolution Request, the Grievance and the Grievance Appeal. (Exhibit 1). Plaintiff has been denied relief at every stage of the process.

23. Plaintiff hereby incorporates and makes a part of herein all of the contentions and allegation made within his IRR,

Grievance, and Grievance Appeal which are attached hereto as Exhibit 1.

24. The defendants are deliberately and knowingly imposing a substantial burden upon Plaintiff's ability to freely exercise his religion in violation Department of Corrections policy, state and federal law and the U.S. Constitution as applied to the states.

25. The MDOC has recognized the importance of Kosher food to Jewish persons stating:

Jewish dietary law (Kosher) is an important aspect of religious observance for all Jews." However, the Missouri Department of Corrections does not provide for a Kosher food diet.

26. It is forbidden under Kosher Law for Jews to eat meat and dairy items that are mixed or cooked together, served on the same dish or even eaten within 6 hours of one another.

27. On occasion, NECC serves meals that have foods with a cheese ingredient or plain cheese served beside the meat main course.

28. Plaintiff must eat to continue living.

29. In an effort to observe the dietary mandates of his religion as closely as possible, Plaintiff has repeatedly asked Defendant Leopold to serve him trays without the plain cheese side dish as this would impose no additional cost or burden upon any of the defendant. Defendant Leopold, however, refuses to exercise his authority to grant Plaintiff even this minor accommodation.

30. Defendant Barnhart, as NECC Chaplin, has the responsibility to advocate for the religious needs of the inmates assigned to NECC, including Plaintiff, and therefore has the duty to assist Plaintiff in acquiring Kosher meals, but has refused to do so, thereby neglecting his responsibilities.

31. Additionally, Defendant Barnhart makes quarterly purchases using inmate canteen funds to provide religious materials for the different religious communities within NECC but refuses to allow Plaintiff to purchase any Kosher foods, utensils or supplies for Plaintiff, even though Judaism is a religion recognized by MDOC and NECC.

COUNT I

RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT OF 2000 VIOLATIONS

32. Plaintiff incorporates the allegations contained in paragraphs 1-31 as though fully set out herein.

33. Plaintiff is a person residing in or confined to an institution.

34. Plaintiff has been denied kosher meals, which is an integral part of the Jewish religion, causing Plaintiff a substantial burden on the practice of his religion, by the named Defendants, who are officials of the state government acting under color of law.

35. Plaintiff has also been substantially burdened in his religious exercise by the Missouri Department of Corrections, which has as a policy, custom, usage and rule of general applicability not to provide kosher meals to Jewish inmates,

knowing that the consumption of kosher food is an integral part of the Jewish religion.

36. The availability of nutritionally-sufficient kosher food for a Jew is not a luxury accomodation; it is an essential provision to allow that person to live.

37. Defendants have never alleged that the imposed substantial burden on Plaintiff's religious exercise is in furtherance of a compelling governmental interest and the the burden is the least restrictive means of furthering that compelling governmental interest.

38. The Missouri Department of Corrections and Northeast Correctional Center has and continues to receive Federal financial assistance.

39. As Plaintiff must chose between eating non-kosher food and death, every bite he takes is done at the peril of his very soul.

COUNT II

RELIGIOUS FREEDOM ACT VIOLATIONS

40. Plaintiff incorporates the allegations in paragraphs 1-39 as though fully set out herein.

41. The Religious Freedom Restoration Act is fully applicable to the State of Missouri.

COUNT III

FIRST AMENDMENT VIOLATION UNDER 42 U.S.C. §1983

42. Plaintiff incorporates the allegations contained in paragraphs 1-41 as though fully set out herein.

43. Plaintiff maintains sincere religious beliefs as a

Jewish person which require him to consume only kosher food.

44. Plaintiff wishes to freely exercise his right to practice the tenets of his faith, but is unable to do so, as he is being deprived of such right by Defendants.

45. All of the named Defendants know, or reasonably should know, that the deprivation of Plaintiff's constitutional right to the free exercise of his religion is wrong, illegal, in violation of clearly established law, and all of the named Defendants' actions further violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

46. Defendants have not offered Plaintiff a valid, rational connection between the policy of not providing kosher meals to Jewish inmates, and Plaintiff specifically, and any asserted governmental interest invoked to justify the deprivation of Plaintiff's rights.

47. Defendants have never offered Plaintiff an alternative means of practicing his religion, and specifically, have offered no alternative to the provision of kosher foods for Plaintiff.

48. Defendants have never denied that providing kosher meals to Plaintiff would have more than a de minimis impact on the institution.

49. Defendants have never offered a valid, penological reason for the deprivation of Plaintiff's rights.

50. Plaintiff has no alternative means of receiving kosher meals. Plaintiff is a poor person and relies on the State for his complete sustenance. Plaintiff is unable to afford the purchase of kosher food.

51. By completely refusing to either establish a kosher kitchen or to purchase easily prepared individual kosher meals, Defendants are not merely interfering with Plaintiff's right to consume a kosher diet, but are completely depriving him of such right.

52. Even though Plaintiff has repeatedly suggested low-cost, easy to prepare kosher meal option to Defendants, they have steadfastly refused to even consider accommodating Plaintiff's need for a kosher diet.

53. The Jewish dietary laws are an important, integral part of the covenant between the Jewish people, including Plaintiff, and the God of Israel.

54. Plaintiff is seeking a diet sufficient to sustain him in good health without violating the Jewish dietary laws.

55. Plaintiff is entitled to an adequate kosher diet, as a clearly established constitutional right while Plaintiff is confined, and Defendants are obligated to provide Plaintiff with kosher meals.

56. As a direct and proximate result of the Defendants' actions and conduct, Plaintiff suffers from extreme malnutrition, weightloss, migranes, extreme anxiety, and feelings of worthlessness, dehumanization, persecution, and the terror of eternal doom from the guilt of violating the fundamental tenets of his religion.

57. As described above, the Defendants have acted and continue to act maliciously, oppressively, knowingly, willingly, and with deliberate indifference, in conscious disregard of

Plaintiff's health and well-being as well as clearly established law, depriving Plaintiff of his constitutional and statutory rights, including, but not limited to, those set forth under the First and Fourteenth Amendments of the United States Constitution, with the full knowledge of the harm caused to Plaintiff, entitling him to the relief sought, including punitive damage.

WHEREFORE, Plaintiff, who has suffered and continues to suffer from irreparable injuries which will continue into the future, respectfully prays for relief as follows:

(1) A declaration, pursuant to 28 U.S.C. §§2201 and 2202, that Defendants' actions and conduct complained of herein is done in violation of the Religious Land Use and Institutionalized Persons Act of 2000, the Religious Freedom Restoration Act and the First and Fourteenth Amendments of the U.S. Contitution;

(2) Temporary and Permanent injunctive relief requiring Defendants to supply Plaintiff with a Kosher diet;

(3) Compensatory and Punitive damages in the amount of $1,000,000.00; and

(4) such further relief as this Court deems just and proper to ensure Plaintiff's right to freely exercise his religion.

Respectfully submitted,

Norman Lee Toler
Plaintiff, pro se