UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NORMAN LEE TOLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:05CV0082 JCH |
| ) | |
| TIM LEOPOLD, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter arises on Defendants Tommy Barnhart, Patricia Cornell, Debra Kelly, Tim Leopold, Jim Moore, William Stange, and Joe Tiffany's (collectively ("Defendants"[1]) Motion for Summary Judgment, filed September 14, 2006, and Supplemental Motion for Summary Judgment, filed July 30, 2007. (Doc. Nos. 42, 64).

**I.   Background**

Plaintiff is an inmate in custody of the Missouri Department of Corrections ("MDOC"), housed at Northeast Correctional Center ("NECC") in Bowling Green, Missouri. (Compl., ¶¶ 2, 3). Plaintiff is an observant Jew.[2] (Id., ¶ 4). In his Complaint, Plaintiff alleges that Defendants, including the MDOC and certain MDOC officials, violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* (2006), and Plaintiff's First Amendment right to the free exercise of his religion, by refusing to provide him with a kosher diet

---

[1] Although the Missouri Department of Corrections is a Defendant in this suit as to Plaintiff's RLUIPA claim, it does not join in the instant Motions for Summary Judgment.

[2] For purposes of their summary judgment motions only, Defendants concede that Plaintiff is Jewish, and needs kosher food for religious reasons. (See, e.g., Defendants' Suggestions in Support of Motion for Summary Judgment ("Defendants' Memo in Support"), P. 2 n. 2).

during his incarceration. Plaintiff seeks declaratory relief, stating Defendants have violated his rights under RLUIPA and the Constitution, injunctive relief requiring Defendants to provide Plaintiff with a kosher diet, and compensatory and punitive damages. (Id., P. 13).

As stated above, Defendants filed Motions for Summary Judgment on September 14, 2006, and July 30, 2007, maintaining no genuine issues of fact remain, and they are entitled to judgment as a matter of law. (Doc. Nos. 42, 64).

## II.     Summary Judgment Standard

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

**III.    Discussion**

    **A.    RLUIPA And The First Amendment Free Exercise Of Religion**

As stated above, Plaintiff maintains Defendants have violated his rights under RLUIPA and the First Amendment. "Although incarcerated, inmates retain First Amendment protections, including the right that no law shall prohibit the free exercise of religion." *El-Tabech v. Clarke*, 2007 WL 1487148 at *8 (D. Neb. May 18, 2007), citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). "Courts evaluating a First Amendment claim must first consider whether the challenged governmental action infringes upon a sincerely held religious belief." *El-Tabech*, 2007 WL 1487148 at *8 (citation omitted). "Then, the court must apply the *Turner* factors, a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (internal quotations and citation omitted).

> *Turner* sets forth four factors that courts should consider in making that determination. First, we ask whether there is a valid rational connection between the prison regulation and the government interest justifying it. Second, we consider whether there is an alternative means available to the prison inmates to exercise the right. Third, we examine whether an accommodation would have a significant ripple effect on the guards, other inmates, and prison resources. Fourth, we evaluate whether there is an alternative that fully accommodates the prisoner at de minimis cost to valid penological interests.

*Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982-83 (8th Cir.) (internal quotations and citations omitted), cert. denied, 543 U.S. 991 (2004); see also *El-Tabech*, 2007 WL 1487148 at *8.

While courts employ a rational basis test to prisoners' First Amendment claims, "Congress has established a higher level of scrutiny for free exercise claims brought under RLUIPA." *El-Tabech*, 2007 WL 1487148 at *8. The statute provides in relevant part as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,....even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "A government regulation is a substantial burden when it significantly inhibits or constrains conduct or expression that manifests some central tenet of a person's individual religious beliefs, meaningfully curtails a person's ability to express adherence to a faith, or denies a person reasonable opportunities to engage in religious activities cardinal to a person's religion." *El-Tabech*, 2007 WL 1487148 at *9 (citation omitted). RLUIPA does not elevate the accommodation of religious observances over the institution's need to maintain order and safety, however, and thus great deference is accorded to the judgment and expertise of prison officials. *Id.* (citations omitted).

Plaintiff here maintains that his inability to maintain a complete kosher diet, a central tenet of Judaism, constitutes a significant inhibition of his exercise of religious beliefs. *Beerheide v. Suthers*, 286 F.3d 1179, 1183 (10th Cir. 2002). Viewing the evidence regarding Plaintiff's ability to practice his religion in the light most favorable to Plaintiff, the nonmoving party, the following picture emerges. The MDOC currently does not serve Plaintiff kosher meals. (Patricia Cornell Aff., ¶ 9).

Some kosher foods are for sale in the inmate canteen, but it is unclear whether these foods are sufficient to provide Plaintiff with a complete diet. In any event, he cannot afford a complete diet comprised of only items purchased from the canteen. (Plaintiff's Response to Defendants' First Request for Admissions, ¶ 27; see also Plaintiff's Response to Defendants' Motion for Summary Judgment, ¶¶ 71-72). NECC does offer vegetarian meals designed to accommodate inmates' religious dietary requirements. (Defendants' Memo in Support, ¶¶ 43-44). While the vegetarian meals contain no inherently non-kosher ingredients, however, they nevertheless are prepared in such a way as to render them non-kosher; *inter alia*, utensils and containers are shared between kosher and non-kosher foods. (Plaintiff's Dep., P. 109).[3] Prepared foods from which Plaintiff may self-select items to eat likewise are non-kosher. (Defendants' Memo in Support, ¶ 46).

Defendants conversely maintain there is no substantial burden on Plaintiff's ability to practice his religion, because, although he is denied the ability to keep kosher, Plaintiff is offered a vegetarian dining option at every meal. (Defendants' Memo in Support, P. 11). Further, Defendants' evidence suggests that Plaintiff is offered the opportunity to practice other aspects of his religion, including the ability to study Torah, possess a Chumash (Torah in book form) and other religious articles, and occasionally have access to phylacteries. (Plaintiff's Response to Defendants' First Set of Interrogatories, # 11). Plaintiff also is permitted access to donated items with which to observe Passover, is permitted to observe some holy days, and is allowed to fast in observance of some

---

[3] As the courts have noted:
> [K]osher food is no longer "kosher" if it is prepared in containers which have held non-kosher food. To keep kosher foods untainted, containers, pots and pans, utensils, and all other implements used in their preparation must not come into contact with any item that is or has had contact with nonkosher food.

*Beerheide*, 286 F.3d at 1183.

religious fast days. (*Id.*, ## 13, 15, 18). He is allowed to refrain from work or other required activities on at least some holy days, and is allowed to pray three times a day. (Douglas Worsham Aff., ¶¶ 4(a)-(d), (f)). Finally, Plaintiff is permitted to congregate with other members of his faith in study or worship groups of a minimum size (Worsham Aff. ¶ 5), and has been allowed to visit with rabbis who come to NECC. (Plaintiff's Response to Defendants' First Set of Interrogatories, # 20).

Defendants further maintain that even assuming Plaintiff's religious exercise is substantially burdened, the prison's inability to accommodate Plaintiff's request stems from its legitimate concerns regarding the administrative burden and costs associated with providing a kosher diet. (Defendants' Memo in Support, PP. 12-15). Specifically, Defendants allege that providing Plaintiff with a kosher diet by serving him prepackaged kosher meals, as he suggests, would cost significantly more than the current cost of feeding him, as the meals themselves are more expensive than the average cost of the current inmate fare, and further would need to be supplemented with other foods in order to satisfy MDOC's minimum daily nutritional guidelines. (Id., PP. 12-13). Defendants further maintain the logistics associated with providing Plaintiff prepackaged kosher meals would interfere with the streamlined food production system now in place within the MDOC. (Id., PP. 13-15).[4]

Upon consideration of the record before it, and the evidence as it relates to Plaintiff's claims of alleged violations of RLUIPA and the First Amendment, the Court finds summary judgment is not warranted. *El-Tabech*, 2007 WL 1487148 at *9. Specifically, the Court finds genuine issues of material fact remain concerning the cost and feasibility of providing Plaintiff a kosher diet, through

---

[4] In their Supplemental Motion for Summary Judgment, Defendants further maintain the provision of kosher meals would threaten safety and security at NECC. (Defendants' Suggestions in Support of their Supplemental Motion for Summary Judgment, ¶ 37). Defendants provide almost no elaboration on this assertion, however, and the Court finds it inappropriate to grant summary judgment on this basis.

either the establishment of a kosher kitchen at NECC, or the provision of pre-packaged kosher meals. *Id.* Defendants' Motion for Summary Judgment will therefore be denied, and Plaintiff's RLUIPA and First Amendment claims remain subject to further inquiry at trial. *Id.*

### B. <u>Qualified Immunity</u>

In their Motion for Summary Judgment, Defendants next allege they are entitled to qualified immunity. (Defendants' Memo in Support, PP. 17-19). "Government officials are entitled to qualified immunity from suit under 42 U.S.C. § 1983 if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Johnson v. Board of Police Com'rs*, 2007 WL 1629909 at *1 (E.D. Mo. Jun 4, 2007) (internal quotations and citations omitted).

The Supreme Court recently held that, "[i]n resolving questions of qualified immunity, courts are required to resolve a threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007) (internal quotations and citation omitted). "If, and only if, the court finds a violation of a constitutional right, the next, sequential step is to ask whether the right was clearly established....in light of the specific context of the case." *Id.* (internal quotations and citation omitted).

As stated above, in his Complaint Plaintiff alleges Defendants' refusal to provide a kosher diet violates his rights under RLUIPA and the First Amendment. Upon consideration, the Court finds that with these allegations, Plaintiff has successfully asserted the violation of a clearly established constitutional right, sufficient to withstand summary judgment. <u>See, e.g.</u>, *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003) (internal quotations and citation omitted) ("It is well settled that jail and

prison inmates have the right to be provided with food sufficient to sustain them in good health [and] that satisfies the dietary laws of their religion."). The Court further finds a genuine issue of material fact remains with respect to whether the right was clearly established in light of the specific facts of this case. *Scott*, 127 S.Ct. at 1774. In other words, the Court cannot hold as a matter of law that by offering Plaintiff a vegetarian food option, the ability to self-select items from the menu, and the ability to purchase kosher food from the canteen, Defendants did not violate Plaintiff's clearly established rights. Defendants' Motion for Summary Judgment on this point will therefore be denied.

C. **Eleventh Amendment Immunity**

In their Motion for Summary Judgment, Defendants make two assertions with respect to Eleventh Amendment immunity. First, Defendants maintain the individual Defendants are entitled to Eleventh Amendment immunity in their official capacities. (Defendants' Memo in Support, PP. 19-20). The Eleventh Amendment bars suits against state officials in their official capacities when, "the state is the real, substantial party in interest." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (internal quotations and citations omitted). Further, the state is the real party in interest if, "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Id.* at 102 n. 11 (internal quotations and citations omitted). Thus, a § 1983 plaintiff cannot recover monetary damages in an official-capacity suit against a state official, as such an award would require an expenditure of state

funds. *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989). Therefore, the Eleventh Amendment bars Plaintiff's claim for monetary damages against Defendants in their official capacities.[5]

Defendants next assert that RLUIPA does not require states to waive their sovereign immunity from suits for monetary damages. (Defendants' Memo in Support, P. 20). Upon consideration, the Court agrees with Defendants' assertion. See, e.g., *Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006) ("We conclude that RLUIPA's 'appropriate relief against a government' language falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages."). Defendants' Motion for Summary Judgment on Plaintiff's RLUIPA claims against them in their official capacities for monetary damages will therefore be granted.[6]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment and Supplemental Motion for Summary Judgment (Doc. Nos. 42, 64) are **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that this matter is set for trial on **Monday, December 3, 2007**, at **9:00 a.m.** in the courtroom of the undersigned.

**IT IS FURTHER ORDERED** that the Court has reviewed the pleadings in this matter and is of the opinion that the appointment of counsel would best serve the interest of justice.

---

[5] As further support for its holding, the Court notes that in an official-capacity action for money damages, a state official is not a person within the meaning of §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

[6] The Court has considered Defendants Leopold and Barnhart's argument in favor of summary judgment, claiming a lack of personal involvement, and finds it to be without merit.

**IT IS FURTHER ORDERED** that Gerald R. Ortbals, STINSON MORRISON HECKER LLP, 100 S. Fourth Street, Suite 700, St. Louis, MO, 63102, phone 314-259-4500, fax 314-259-4599, is appointed to represent Plaintiff in this matter. The Clerk of the Court shall provide Plaintiff's newly-appointed counsel with a complete copy of the court file at no cost.

**IT IS FURTHER ORDERED** that, unless otherwise ordered by the Court, the attorneys shall, not less than twenty (20) days prior to the date set for trial:

1. **Stipulation:** Meet and jointly prepare and file with the Clerk a JOINT Stipulation of all uncontested facts, which may be read into evidence subject to any objections of any party set forth in said stipulation (including a brief summary of the case which may be used on Voir Dire).

2. **Witnesses:**

   (a) Deliver to opposing counsel, and to the Clerk, a list of all proposed witnesses, identifying those witnesses who will be called to testify and those who may be called.

   (b) Except for good cause shown, no party will be permitted to call any witnesses not listed in compliance with this Order.

3. **Exhibits:**

   (a) Mark for identification all exhibits to be offered in evidence at the trial (Plaintiff to use Arabic numerals and Defendants to use letters, e.g., Pltf-1, Deft.-A, or Pltf Jones-1, Deft Smith-A, if there is more than one plaintiff or defendant), and deliver to opposing counsel and to the Clerk a list of such exhibits, identifying those that will be introduced into evidence and those that may be introduced. The list shall clearly indicate for each business record whether the proponent seeks to authenticate the business record by affidavit or declaration pursuant to Fed.R.Evid. 902(11) or 902(12).

(b) Submit said exhibits or true copies thereof, and copies of all affidavits or declarations pursuant to Fed.R.Evid. 902(11) or 902(12), to opposing counsel for examination. Prior to trial, the parties shall stipulate which exhibits may be introduced without objection or preliminary identification, and shall file written objections to all other exhibits.

(c) Except for good cause shown, no party will be permitted to offer any exhibits not identified or not submitted by said party for examination by opposing counsel in compliance with this Order. Any objections not made in writing at least ten (10) days prior to trial may be considered waived.

4. **Depositions, Interrogatory Answers, and Request for Admissions:**

(a) Deliver to opposing counsel and to the Clerk a list of all interrogatory answers or parts thereof and depositions or parts thereof (identified by page and line numbers), and answers to requests for admissions proposed to be offered in evidence. At least ten (10) days before trial, opposing counsel shall state in writing any objections to such testimony and shall identify any additional portions of such depositions not listed by the offering party which opposing counsel proposes to offer.

(b) Except for good cause shown, no party will be permitted to offer any interrogatory answer, or deposition or part thereof, or answer to a request for admissions not listed in compliance with this Order. Any objections not made as above required may be considered waived.

5. **Instructions:** Submit to the Court and to opposing counsel their written request for instructions and forms of verdicts reserving the right to submit requests for additional or modified

instructions at least ten (10) days before trial in light of opposing party's requests for instructions. (Each request must be supported by at least one pertinent citation.)

      **6.**    **Trial Brief:** Submit to the Court and opposing counsel a trial brief stating the legal and factual issues and authorities relied on and discussing any anticipated substantive or procedural problems.

      **7.**    **Motions In Limine:** File all motions in limine to exclude evidence, <u>and submit a courtesy copy directly to the Court's chambers</u>, at least ten (10) days before trial.

Dated this <u>31st</u> day of July, 2007.

                                      <u>/s/ Jean C. Hamilton</u>
                                       UNITED STATES DISTRICT JUDGE