UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

NORMAL TOLER, )
)
    Plaintiff(s), )
)
vs. ) Case No. 2:05CV82 JCH
)
TIM LEOPOLD, et al., )
)
    Defendant(s). )

## MEMORANDUM AND ORDER

This matter is before the Court following a bench trial conducted January 2 and 3, 2008. Having considered the pleadings, trial testimony, exhibits, and proposed findings of fact and conclusions of law submitted by the parties, the Court hereby makes and enters the following findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

### Findings of Fact

1.    Plaintiff Norman Toler ("Toler") was born to non-Jewish parents, and raised by relatives in a Pentecostal home.

2.    As an adult in 2002, Toler made a conscious decision to become a Jew, and to practice the Jewish commandments as he understood them through self-study and discussions with a rabbi.

3.    Although he never formally converted to Judaism, Toler claims to have had a Bar Mitzvah in December, 2002, or January, 2003.

4.    Toler has been an inmate with Defendant Missouri Department of Corrections ("MDOC") since December 10, 2004, incarcerated at Northeast Correctional Center ("NECC").

5.    MDOC permits inmates to declare their religious preference at any time, and does not make determinations as to whether the inmates are sincere in their religious beliefs.

6.     At the time he entered MDOC's custody, Toler identified himself as Jewish.

7.     Toler has never changed his religious preference designation, and other inmates at NECC know that he is Jewish.

8.     While at NECC, Toler has practiced his religion in many ways, including reading from the Torah every Sabbath, studying Jewish materials and topics throughout the week, wearing a yarmulke, fasting as required by the Jewish holy days, and keeping in contact with various rabbis in the community.[1]

9.     As part of his religious beliefs, Toler believes he must maintain a Kosher diet.[2]

10.    Toler has not always kept Kosher, both because he did not fully understand the requirements of a Kosher diet, and because MDOC does not provide Kosher meals to its inmate population.[3]

11.    Toler can purchase some Kosher food items from the prison canteen, but he cannot afford to purchase a nutritionally adequate Kosher diet each month.

12.    Toler filed the instant lawsuit under 42 U.S.C. § 1983 on December 30, 2005. In his Complaint, Toler alleges Defendants Tommy Barnhart, Tim Leopold, James Moore, Debra Kelly, William Stange, and Patricia Cornell violated his right to free exercise of religion under the First and

---

[1] Because there are fewer than five Jewish inmates at NECC, there are no Jewish group worship services. Toler therefore meets with a Buddhist group, because he believes their moral precepts to be similar to Jewish precepts.

[2] Defendant Chaplain Tommy Barnhart acknowledged that keeping Kosher is an important aspect of the Jewish faith.

[3] MDOC utilizes a Master Menu, planned according to the United States Department of Agriculture/Department of Health and Human Services Food Guide Pyramid, and the Dietary Guidelines for Americans. The Master Menu is designed to accommodate as many medical and religious diet needs as possible. MDOC considered incorporating a Kosher menu alternative in 2005, but decided against it. MDOC does provide a vegetarian alternative, but the offerings therein are not Kosher because they are served in the same pots and pans, and with the same utensils, that are used for non-Kosher food items.

Fourteenth Amendments to the United States Constitution.

13. Toler also alleges Defendants MDOC, Barnhart, Leopold, Moore, Kelly, Stange, and Cornell violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") (42 U.S.C. § 2000cc et seq.).

14. Toler seeks a declaration that Defendants violated his First Amendment and RLUIPA rights, by denying him a Kosher diet.

15. Toler also seeks injunctive relief, in the form of the provision of pre-packaged Kosher meals, to be supplemented with fruits and vegetables from the regular prison menu, and possibly items from the prison canteen or Kosher food vendors.[4]

## Conclusions of Law

### I. RLUIPA

1. As stated above, Toler contends MDOC and the other Defendants violated his free exercise rights under RLUIPA, by refusing to provide him a Kosher diet. The statute provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution....even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).[5]

---

[4] Toler is not requesting that Defendants maintain a kosher kitchen at NECC.

[5] "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 986 (8th Cir.), cert. denied, 543 U.S. 991 (2004). In other words, "[w]hile the rational-basis test applies to constitutional claim cases, strict scrutiny applies to claims brought under RLUIPA." El-Tabech v. Clarke, 2007 WL 2066510 at *2 (D. Neb.

2.       In analyzing Toler's RLUIPA claim, the Court first considers the threshold issue of whether the challenged action infringes upon a sincerely held religious belief. Murphy, 372 F.3d at 988 (citation omitted). The Court finds Judaism is a legitimate form of religion protected by the First Amendment, and that Toler is sincere in his practice of and belief in that religion. El-Tabech, 2007 WL 2066510 at *3. While the testimony presented at trial indicates Toler has not always followed the tenets of the Jewish faith, "[c]ourts must be cautious in attempting to separate real from fictitious religious beliefs." Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir. 1996) (citation omitted).

> [Plaintiff] himself admits that his understanding of the tenets of his belief-system are evolving. However, [c]ourts should not undertake to dissect religious beliefs because the believer admits that he is struggling with his position or because his beliefs are not articulated with the clarity and precision that a more sophisticated person might employ.....It is not the place of the courts to deny a man the right to his religion simply because he is still struggling to assimilate the full scope of its doctrine. *We would not deny that a Jew's desire to keep Kosher is rooted in religion even if he were not a Rabbinical scholar capable of explaining the more subtle spiritual aspects of Judaism....*

Love v. Reed, 216 F.3d 682, 688 (8th Cir. 2000) (emphasis added) (internal quotations and citation omitted). The Eighth Circuit in Love additionally held that some allowance had to be made for the plaintiff's isolation from a source of formal instruction in Judaism. Love, 216 F.3d at 688. Furthermore, the Court stated that, although members of the Jewish community might not consider plaintiff Love to be Jewish, as he was raised as a Christian and underwent no formal conversion, "the question whether [Love's] beliefs are entitled to Free Exercise protection turns on whether they are sincerely held, not on the ecclesiastical question whether he is in fact a Jew under Judaic law." Id. at 689 n. 9 (internal quotations and citation omitted).[6]

---

Jul. 17, 2007).

[6] Although both Love and Ochs involved constitutional free exercise claims, the Eighth Circuit hesitates to make judgments regarding the sincerity of religious beliefs in the RLUIPA context

3. Next, the Court considers whether Defendants' refusal to provide Toler with a Kosher diet substantially burdens his right to exercise his religion. In order to constitute a substantial burden, the government policy or action must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion. Murphy, 372 F.3d at 988. Toler maintains, and Defendants do not dispute, that keeping Kosher is a fundamental tenet of the Orthodox Jewish faith. (See Testimony of Defendant Chaplain Tommy Barnhart, Trial Transcript, P. 184). Under Eighth Circuit law, "prison inmates are entitled to reasonable accommodation of their religious dietary needs." Love, 216 F.3d at 689 (citation omitted). The Court finds Toler has no consistent and dependable way of exercising his right to maintain a Kosher diet, without the requested accommodation by Defendants. Id. at 689-90.[7] Defendants' failure to provide the requested accommodation, i.e., a Kosher diet, thus substantially burdens Toler's ability to freely exercise his religion. Id. at 690.

4. The Court thus turns to an analysis of whether Defendants' refusal to provide a Kosher diet represents the least restrictive means to further a compelling governmental interest. In doing so, the Court recognizes that RLUIPA's standards are applied, "with due deference to the experience and

---

as well. See Murphy, 372 F.3d at 988.

[7] The Court finds this case differs from Patel v. U.S. Bureau of Prisons, 515 F.3d 807 (8th Cir. 2008), in several important respects. First, whereas in Patel the federal prisoner had the option of purchasing *halal* entrees from the commissary, 515 F.3d at 811, there is no indication in the record before this Court that the prison canteen at NECC offers kosher food items sufficient to meet Toler's nutritional requirements. Further, while the Court in Patel held that, "no substantial burden exists if the regulation merely makes the practice of a religious belief more expensive," that Court found no evidence the offered option placed a substantial financial burden on the prisoner. Patel, 515 F.3d at 813, 814. By way of contrast, Toler has demonstrated his indigency, and at trial Defendants did not dispute his inability to afford the purchase of sufficient kosher foods.

expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S.Ct. 2113, 2123, 161 L.Ed.2d 1020 (2005) (internal quotations and citation omitted). Defendants have articulated several reasons for denying Toler a Kosher diet, including the increased cost of food and preparation materials, the risk of increased religious requests, and the threat to institutional security.[8] The Court finds Defendants' denial of a Kosher diet is not rationally related to any legitimate economic or administrative concern, however, for several reasons. First, with respect to cost, Defendants failed to offer any evidence at trial to quantify the economic impact of accommodating prisoners with Kosher meals. For example, while Robin Norris, Food Service Coordinator for MDOC, testified that providing pre-packaged meals could cost up to $15 per day per prisoner, versus the current $2.12 food cost per day per inmate, she admitted she had never conducted a study on the cost of creating a Kosher kitchen. (Trial Transcript, PP. 203, 214, 230). Furthermore, Defendant James Moore, Superintendent/Warden at NECC, conceded that the cost of providing Kosher meals for one individual would not be "enormous." (Trial Transcript, P. 275). With respect to the risk of increased religious requests, Defendant James Moore testified he did not know how many other inmates would request a religious diet, should that option become available. (Trial Transcript, PP. 274-75).[9] In any event, even assuming the change would trigger an increase, "the key factor here is that [Toler's]

---

[8] Institutional security is the most compelling governmental interest in a prison setting. Murphy, 372 F.3d at 983.

[9] As far as specific evidence of a "ripple effect," Defendants offered only Defendant James Moore's testimony that one offender of the Muslim faith had requested non-pork meals approximately two weeks before trial. (Trial Transcript, P. 276). Defendant William Stange, Functional Unit Manager at NECC, testified that the two requests he had received in the last two weeks, from the Native American community asking that sweat lodges be built at NECC, were the first religious accommodation requests he had received in years. (Trial Transcript, P. 312).

request is based upon his religious convictions. If other prisoners request dietary accommodations based upon sincerely held religious beliefs, then [MDOC] has an obligation to consider their requests." Love, 216 F.3d at 691. Finally, with respect to the most important consideration, institutional security, the Court finds Defendants' speculations regarding the increased risk associated with providing Kosher food to be undermined by the undisputed fact that Defendants have provided numerous alternative menus for medical reasons without incident or impact. (See Trial Transcript, PP. 267-68, 345-47, 375-76).[10] See Murphy, 372 F.3d at 988-89 (internal quotations and citations omitted) ("Nevertheless, [MDOC] must do more than merely assert a security concern. Although we give prison officials wide latitude within which to make appropriate limitations, they must do more than offer conclusory statements and post hoc rationalizations for their conduct."). Thus, while deference to prison officials' expertise is due under RLUIPA, the evidence shows Defendants did not select the least restrictive means to achieve their goal. El-Tabech, 2007 WL 2066510 at *3. The Court thus finds Defendants violated Toler's right to freedom of religion when they denied him reasonable access to a Kosher diet. Id.

## II. First Amendment

5. "The First Amendment provides that no law shall prohibit the free exercise of religion." El-Tabech, 2007 WL 2066510 at *2, citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

6. "Although prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights in light of the needs of the penal system." Murphy, 372 F.3d at 982.

---

[10] Defendant Patricia Cornell, Assistant Division Director in the Division of Adult Institutions at MDOC, testified she had no specific facts to offer with respect to her security concerns over offering Kosher meals. (Trial Transcript, PP. 376-77).

> Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting. A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is reasonably related to legitimate penological interests. *Turner*[11] sets forth four factors that courts should consider in making that determination. First, we ask whether there is a valid rational connection between the prison regulation and the government interest justifying it. Second, we consider whether there is an alternative means available to the prison inmates to exercise the right. Third, we examine whether an accommodation would have a significant ripple effect on the guards, other inmates, and prison resources. Fourth, we evaluate whether there is an alternative that fully accommodates the prisoner at de minimis cost to valid penological interests.

Id. at 982-83 (internal quotations and citations omitted).

7. This Court already has determined that the challenged action infringes on Toler's sincerely held religious belief. The Court thus turns to a discussion of the Turner factors, "to determine if the regulation restricting the religious practice is 'reasonably related to legitimate penological objectives.'" Murphy, 372 F.3d at 983, quoting O'Lone, 482 U.S. at 353. "The first step in scrutinizing a regulation or policy that affects the constitutional rights of those in the custody of the state is to determine whether there is a rational connection between the regulation and the state interest or interests asserted." Thompson v. Vilsack, 328 F.Supp.2d 974, 978 (S.D. Iowa 2004). As stated above, Defendants assert both cost and security concerns as penological reasons for their denial of a Kosher diet. Because prison officials have legitimate penological interests both in working within the parameters of a fixed budget, and in reducing tension between those inmates who receive Kosher meals and those who do not, the Court concludes these interests have a valid, rational connection with the denial at issue. Thompson, 328 F.Supp.2d at 978.

8. As to the second factor, "[t]he critical question for *Turner* purposes is whether the prison

---

[11] Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

officials' actions deny prisoners their free-exercise rights without leaving open sufficient alternative avenues for religious exercise." Goff v. Graves, 362 F.3d 543, 549 (8th Cir. 2004) (citation omitted). Here, although Toler admittedly is free to practice other aspects of his religion, Defendant Chaplain Tommy Barnhart confirmed the ability to keep a Kosher diet is central to the Jewish faith. Because there exists no alternative means for Toler to adhere to this mandate of his religion, other than to receive a Kosher diet, this factor favors Toler.

9. Under the third Turner factor, the Court must examine whether an accommodation would have a significant ripple effect on the guards, other inmates, and prison resources. Thompson, 328 F.Supp.2d at 979. "Very few changes in a correctional institution will have no ramifications on the liberty of others or on the use of the prison's limited resources." Id. (internal quotations and citation omitted). Thus, while Turner requires that courts give deference to prison officials, "that deference is not absolute and requires some presentation of specific and reliable evidence." Id. (citation omitted). "[Defendants], therefore, must come forward with credible and specific evidence of the effect that [the provision of] kosher meals will have on its asserted interests." Id. As noted above, Defendants here fail to present sufficient evidence of any significant ripple effect on cost or security concerns. Rather, although claiming a budgetary interest, Defendants do not provide specific figures or calculations to demonstrate the impact that providing Toler with Kosher meals would have on the institution's budget. Id. The same problem plagues Defendants' asserted security concerns, as they fail to demonstrate that providing Kosher meals would result in a specific threat to institutional security. See Thompson, 328 F.Supp.2d at 979 ("As stated above, there is hardly a prison regulation that will not have at least *some* effect on others, so it is the State's burden to produce credible and specific evidence to support this asserted interest....In other words, Defendants cannot merely point to a hypothetical impact on prisoner relations and expect to satisfy the test in *Turner*.").

10. Finally, the Court must evaluate whether there exists an alternative that fully accommodates the prisoner at de minimis cost to valid penological interests. While deference is due to prison officials' expertise, the evidence shows that Defendants did little before denying Toler his request for a Kosher diet. In other words, Defendants did not determine how much it would cost either to create a Kosher kitchen, or to provide Toler with pre-packaged Kosher meals, nor did they determine whether they could provide Toler with Kosher food from the prison canteen. The Court therefore finds that Defendants violated Toler's right to freedom of religion when they denied him reasonable access to a Kosher diet. El-Tabech, 2007 WL 2066510 at *3. The Court thus orders the parties to negotiate the feasibility of providing Toler with the following options:

1. Supplying Toler with pre-packaged Kosher meals.

2. Supplying Toler with Kosher food from items already available on the Master Menu at NECC.

3. Supplying Toler with Kosher foods purchased from Kosher food vendors.

The Court further orders the parties to report back in sixty (60) days on which option or combination of options will be instituted by MDOC.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that judgment is entered in favor of Plaintiff on Plaintiff's claims under the First Amendment and RLUIPA, as set forth herein.

**IT IS FURTHER ORDERED** that the parties shall submit their negotiation results to the Court within sixty (60) days of the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 52, a separate Judgment shall accompany this Memorandum and Order.

Dated this 3rd day of April, 2008.

                                            /s/ Jean C. Hamilton
                                            UNITED STATES DISTRICT JUDGE